```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
FEDERAL HOUSING FINANCE AGENCY, etc.,    :
                                         :
                       Plaintiff,        :    11 Civ. 6192 (DLC)
          -v-                            :
                                         :    OPINION & ORDER
DEUTSCHE BANK AG, et al.,                :
                                         :
                       Defendants.       :
                                         :
----------------------------------------X
```

APPEARANCES:

For Plaintiff Federal Housing Finance Agency:
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

For Defendants:
Thomas C. Rice
David J. Woll
Alan Turner
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

DENISE COTE, District Judge:

This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial

institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.  On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann. § 13.1-522(A)(ii), (C); and the District of Columbia Securities

---

[1] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11 Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ. 6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al., 11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ 6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192 (DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193 (DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195 (DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v. Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC); FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201 (DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of the cases, including this one, the Agency has also asserted claims of fraud and aiding and abetting fraud against the entity defendants under the common law of New York State (the "Fraud Claim Cases").  As pleaded, these fraud claims attach to each of the three categories of misstatements upon which the plaintiff's securities law claims are based.

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[2]  Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases.  Briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in this case and the other Fraud Claim Cases becoming fully submitted on October 11, 2012.  The motions in the remaining nine cases were fully submitted November 9, 2012.  Depositions are to begin in all cases in January 2013, and all fact and

---

[2] Federal Housing Finance Agency v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); Federal Housing Finance Agency v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); Federal Housing Finance Agency v. JPMorgan Chase & Co., et al., No. 11 Civ. 6188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., No. 11 Civ. 6202 (DLC), 2012 WL 535118 (S.D.N.Y. Nov. 8, 2012) ("Merrill").

3

expert discovery in this matter, 11 Civ. 6192 (DLC), must be concluded by December 6, 2013.  Trial in this matter is scheduled to begin on September 29, 2014, as part of the third tranche of trials in the coordinated actions.

## DISCUSSION

This case concerns RMBS Certificates allegedly purchased by the GSEs between September 2005 and October 2007.  Each of the GSE Certificates pertains to one of 40 securitizations offered for sale pursuant to one of eight shelf-registration statements.  The lead defendant is Deutsche Bank AG.  Various corporate affiliates of Deutsche Bank and associated individuals are also defendants.  Deutsche Bank affiliates served as lead underwriter for all 40 of the securitizations at issue, and as sponsor and depositor for 35 of them.  Each individual defendant signed one or more of the Offering Documents.

Defendants' motion presses a number of arguments that are also pressed by other defendants in these coordinated actions, some of which have been addressed by this Court's previous Opinions.  The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the rulings of those prior Opinions.

The motion to dismiss devotes particular attention to the claim that the FHFA's scienter allegations are insufficient to

support its fraud claims.  These defendants' footprint in the mortgage-backed securities market differed somewhat from that of the defendants in Chase.  Despite this fact and the different allegations that flow from it, however, the Amended Complaint fails and survives in similar fashions.  As in Chase, the facts alleged in the Amended Complaint are sufficient to plead fraud with respect to the Offering Materials' representations regarding mortgage-underwriting standards.  With respect to the scienter component of FHFA's fraud claims based on LTV and owner-occupancy information, however, the Amended Complaint relies entirely on the disparity between the statistics reported by the defendants and the results of the Agency's own analysis.  Without additional support, this disparity is insufficient to allege fraudulent intent with the specificity required by Rules 8(a) and 9(b), Fed. R. Civ. P.  Accordingly, the defendants' motion to dismiss is granted with respect to the plaintiff's fraud claims based on LTV and owner-occupancy reporting.

    The defendants also raise several arguments that were not fully addressed by this Court's prior Opinions.  These arguments will be addressed in turn.

I.  Reliance on Term Sheets and Free Writing Prospectuses

    Defendants argue that the FHFA's fraud claims must be dismissed because the Amended Complaint does not allege "that any representative of either GSE read or relied on" the

Prospectus Supplements, which are alleged to have contained most of the misrepresentations, "before deciding to purchase the Certificates."  As described in the Amended Complaint, the GSEs purchased the securities at issue on the basis of term sheets and free writing prospectuses ("Preliminary Materials") that identified the originators of the underlying loans and contained "critical data as to the Securitizations, including with respect to anticipated credit ratings by the credit rating agencies, loan-to-value and combined loan-to-value ratios for the underlying collateral, and owner occupancy statistics."  These Preliminary Materials also referred to registration statements and base prospectuses on file with the SEC, which included places for assurances regarding mortgage originators' adherence to their stated underwriting guidelines.[3]  This information was subsequently incorporated into Prospectus Supplements that the

---

[3] Consistent with SEC Rule 344, the term sheets and free writing prospectuses included a legend that substantially provided, in relevant part:
> The issuer has filed a registration statement (including a prospectus) with the SEC for the offering to which this term sheet relates.  Before you invest, you should read the prospectus in that registration statement and other documents the issuer has filed with the SEC for more complete information about the issuer and this offering.

See 17 C.F.R. § 230.433(c)(2)(i) (mandating such language in free writing prospectuses); see also Securities Offering Reform, SEC Release No. 75, 2005 WL 1692642, at *48 (July 19, 2005) ("Preliminary term sheets and other descriptive material containing only the terms of the securities or the offering . . . , whether or not filed, are . . . free writing prospectuses.").

GSEs received after their purchases of the securitizations closed.

Defendants maintain that because the GSEs did not receive or read the final prospectus supplements until after closing, they could not reasonably have relied on the information contained therein in deciding to purchase the securities. Defendants also argue that, to the extent the Agency's fraud claims rely on representations made in Preliminary Materials that were available to the GSEs prior to their purchase of the securities, they must be dismissed (1) because the Amended Complaint does not quote from or cite to these materials, and (2) these materials contained certain disclaimers regarding the accuracy of the information contained therein.

These arguments are meritless.  Although it is true that the Amended Complaint focuses primarily on statements that were made in the Prospectus Supplements to support FHFA's securities law claims, it also alleges that the data "incorporated into the Prospectus Supplements" was the very same data included in the Preliminary Materials provided to the GSEs.  The plaintiff's allegations regarding the falsity of the Prospectus Supplements are therefore sufficient to plead the falsity of overlapping information in the Preliminary Materials as well.

Nor are defendants correct that disclaimers in the term sheets and free writing prospectuses preclude the plaintiff from

7

pleading reasonable reliance as a matter of law.  Although the Preliminary Materials stated that the information contained therein was "preliminary" and "subject to change," such statements are not disclaimers of reliability; to the contrary, the use of these materials to market and sell the Certificates suggests that defendants fully intended the GSEs to rely on the representations they contained.  In any case, FHFA's complaint is not that the information in the Preliminary Materials was inconsistent with that in the final Prospectus Supplements but that both sets of materials contained the same, inaccurate, information.

    Defendants also point to the fact that the Preliminary Materials instructed investors to "read the prospectus . . . and other documents . . . filed with the SEC" before investing.  But, their selective elision of the verb "has," see supra note 3, obscures the fact that this SEC-mandated language refers to documents already on file at the time the term sheets were circulated, not to any final Prospectus Supplement that may be filed in the future.  Nor does the fact that the final Prospectus Supplements told investors to "rely only on information contained in this document" establish as a matter of law that the GSEs' previously concluded purchases could not have been made in reliance on representations in the Preliminary

Materials that were materially identical to those in the final Prospectus Supplements.[4]

II.  Law Applicable to Plaintiff's Blue Sky Claims

Next, defendants assert that the plaintiff's Blue Sky claims are governed by New York's Martin Act, not the Virginia and D.C. securities statutes.  Defendants cite this Court's conclusion in UBS I that New York rather than D.C. and Virginia law governed FHFA's common law negligent misrepresentation claims and argue that a similar analysis should apply here.

The premise of this argument -- that choice-of-law analysis is appropriate where a defendant's conduct is arguably governed by the statutes of multiple jurisdictions -- is debatable. FHFA's Blue Sky claims do not arise under the common law but are instead creatures of statute.  Virginia and the District of Columbia are indisputably independent sovereigns, distinct from the State of New York and capable of statutorily proscribing conduct that touches or concerns them.  The plaintiff asserts claims under Virginia and District of Columbia law because these jurisdictions host the headquarters of Freddie Mac and Fannie

---

[4] Defendants' reliance on language in the Prospectus Supplements notifying investors that the offering entities had "not authorized anyone to provide you with different information," is likewise unavailing both because, as noted, the information in the Preliminary Materials was not different and because the information they contained was provided by defendants themselves, not anyone requiring authorization to speak on their behalf.

9

Mae, respectively.  Notably, defendants have made no argument that the conduct at issue is beyond the legislative authority of either jurisdiction.  See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 813 (1993) (Scalia, J., dissenting) (defining legislative jurisdiction as "the authority of a state to make its law applicable to persons or activities" (citation omitted)); see also Allstate Ins. Co. v. Hague, 449 U.S. 302, 308 (1981) (requiring a state to have "significant contacts" with an activity in order for the states law to be applicable).

In other contexts, it is uncontroversial that the securities regulations of competing sovereigns may be simultaneously applied to a single set of facts.  For example, as in this case, plaintiffs regularly assert state and federal securities claims simultaneously.  Defendants do not suggest, however, that such claims create a conflict that must be resolved through preemption or choice-of-law analysis.  Nor could they. "It is well-settled that federal law does not enjoy complete preemptive force in the field of securities." Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101, 1107 (4th Cir. 1989).  Section 16 of the Securities Act explicitly provides that "[t]he rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 77p. The Virginia and D.C. Blue Sky statutes contain nearly identical

disclaimers.  See VA Code Ann. § 13.1-522(G); D.C. Code § 31-5606.05(j).  And although no such language appears in New York's Martin Act, a recent holding of the New York Court of Appeals that "an injured investor may bring a common-law claim (for fraud or otherwise) that is not entirely dependent on the Martin Act for its viability," Assured Guar. v. J.P. Morgan Inv. Mgmt., 962 N.E.2d 765, 770 (N.Y. 2011), suggests a fortiori that the Martin Act does not purport to bar claims that have been statutorily authorized by a co-equal sovereign.  For these reasons, the majority of jurisdictions that have considered the issue have rejected defendants' suggestion that a plaintiff may not challenge a single course of conduct under the Blue Sky Laws of multiple jurisdictions simultaneously.  See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., Nos. 2:11-ML-02265-MRP, 2:11-CV-10414 MRP, 2012 WL 1322884, at *2 (C.D. Cal. Apr. 16, 2012) (collecting cases).

Even assuming that a choice of law analysis is appropriate, however, defendants are incorrect that plaintiff's claims are governed by New York's Martin Act.  As in UBS I, the plaintiff's state-law claims are governed by New York choice-of-law principles pursuant to Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).  Under New York's interest analysis approach, the first step in addressing any choice-of-law issue is to determine whether a "true conflict" exists between the

11

interests of the jurisdictions with respect to the particular legal issue.  If, after examining "the policies and purposes sought to be vindicated by the conflicting laws," it appears that one jurisdiction has no interest in applying its law, that jurisdiction must give way.  <u>In re Crichton's Estate</u>, 228 N.E. 2d 799, 806 n.8 (N.Y. 1967).

Here, defendants posit a conflict between New York's Martin Act, which provides no private cause of action for violations of its provisions, and the securities statutes of Virginia and the District of Columbia, which do permit private suits.  As already noted, however, the New York Court of Appeals has recently made clear that, although the Martin Act did not create a private right of action to enforce its provisions, it does not preclude a private plaintiff from bringing a securities-related claim rooted in some other source of law.  <u>Assured Guar. v. J.P. Morgan Inv. Mgmt.</u>, 962 N.E.2d at 770.  Thus, because New York has no interest in precluding claims like those brought by the plaintiff, even if defendants were correct that choice-of-law analysis is appropriate here, their effort to obtain dismissal of the Blue Sky claims would fail.

III.  Successor Liability of DB Products/DBPS

Finally, the motion argues that defendant DB Products is not liable as a successor to MortgageIt, which served as depositor for certain of the securitizations and originated some

12

of the underlying mortgages.  The Amended Complaint alleges that "Defendant DB Products is liable as successor-in-interest to [MortgageIT] for the misstatements and omissions in that Registration Statement under Section 11 of the Securities Act."  Similar allegations are made in support of its Virginia Securities Law and common law fraud claims.  Defendants dispute whether DB Products is a legal successor to MortgageIT, citing the terms of the merger agreement that led to the acquisition of the company by the Deutsche Bank group.  But this argument turns on an issue of fact that is inappropriate for resolution on a motion to dismiss.  Defendants remain free to raise the issue of DB Products' successor liability on summary judgment.

## CONCLUSION

The defendants' July 13 motion to dismiss is granted with respect to the plaintiff's claims of owner-occupancy and LTV-ratio fraud and denied in all other respects.


SO ORDERED:
Dated:   New York, New York
         November 12, 2012

                              _____
                                       DENISE COTE
                              United States District Judge